UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>CHUCK CONNORS PERSON and RASHAN MICHEL,<br><br>Defendants. | 17-CR-683 (LAP)<br><br>Oral Argument Requested |

**DEFENDANT CHUCK CONNORS PERSON'S SUPPLEMENTAL
MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO SUPPRESS WIRETAP AND CELL PHONE EVIDENCE**

**SHER TREMONTE LLP**
Theresa Trzaskoma
Michael Tremonte
Michael W. Gibaldi
Emma Spiro
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
ttrzaskoma@shertremonte.com

*Counsel for Chuck Connors Person*

Defendant Chuck Connors Person respectfully submits this supplemental memorandum of law in support of his joint motion to suppress the following: (1) all communications intercepted pursuant to orders issued on December 9, 2016, January 9, 2017, January 26, 2017, February 10, 2017, April 27, 2017, and May 25, 2017 (the "Wiretap Orders"); (2) all material obtained from the search of his and Rashan Michel's cell phones pursuant to warrants issued on November 3, 2017, and November 6, 2017 (the "Warrants"); and (3) all evidence derived therefrom. This supplemental memorandum of law addresses the impact of the Superseding Indictment returned on May 31, 2018, after Mr. Person and his co-defendant Rashan Michel (collectively, "Defendants") filed the pending motion to suppress.

## THE SUPERSEDING INDICTMENT

The original wiretap application dated December 9, 2016, specified two target offenses: wire fraud, 18 U.S.C. § 1343, and conspiracy to commit wire fraud, 18 U.S.C. § 1349. (*See* Ex. 1 at US_00008565.[1]) In their joint motion to suppress and in their respective motions to dismiss, Defendants attacked the viability of the government's wire fraud theory as alleged in the original Indictment, according to which Defendants had conspired to deprive Auburn of its intangible right to control the allocation of scholarships to men's basketball players. This theory was defective for many reasons; for one, it would have criminalized virtually every single undisclosed NCAA rules violation.

Instead of defending this flawed theory, the government abandoned it completely in the Superseding Indictment returned on May 31, 2018. According to the new theory of wire fraud alleged in Count Five of the Superseding Indictment, Mr. Person supposedly defrauded Auburn

---

[1] The exhibits cited herein were filed under seal as attachments to the Notice of Joint Motion to Suppress Wiretap and Cell Phone Evidence, ECF No. 58.

1

into paying his salary by making "material misrepresentations to Auburn University, including in written agreements and certification forms submitted to Auburn University, that concealed the existence of bribe payments that Person had received in violation of NCAA rules and Person's duties to Auburn University." (*See* Superseding Indictment ¶ 54.) In support of this new theory, the Superseding Indictment now references three specific documents that were not in the original charging instrument or in any of the wiretap applications: Mr. Person's employment agreement dated August 24, 2016; an "ethical conduct agreement" dated August 23, 2017; and an "Employee Disclosure Form" dated August 23, 2017. (*See id.* ¶¶ 23–26.)

## SUPPLEMENTAL ARGUMENT

A wiretap order must be supported by probable cause to believe "that an individual is committing, has committed, or is about to commit a particular offense enumerated in [18 U.S.C. § 2516]." 18 U.S.C. § 2518(3)(a). "The standard for probable cause applicable to § 2518 is 'the same as the standard for a regular search warrant.'" *United States v. Diaz*, 176 F.3d 52, 110 (2d Cir. 1999) (quoting *United States v. Fury*, 554 F.2d 522, 530 (2d Cir. 1977)). Thus, probable cause exists only "if the 'totality-of-the-circumstances' indicate a probability of criminal activity." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 230–32 (1983)). Probable cause means a "fair probability," *Gates*, 462 U.S. at 238, and "requires more than a 'mere suspicion' of wrongdoing," *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Mallory v. United States*, 354 U.S. 449, 455 (1957)). The government must establish probable cause for each element of the suspected crime. *See Williams v. Alexander, Ark.*, 772 F.3d 1307, 1312 (8th Cir. 2014) ("For probable cause to exist, there must be probable cause for all elements of the crime . . . ."); *United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013) ("To make an arrest based on probable cause, the arresting officer must have probable cause for each element of the

offense."); *see also United States v. Nelson*, No. 10 Cr. 414 (PKC), 2011 WL 1327332, at *3 (S.D.N.Y. Mar. 31, 2011) (considering whether defendant's arrest for disorderly conduct was supported by probable cause as to "each element" of the offense).

Here, at a minimum, the government's complete disavowal of the original wire fraud theory represents a remarkable concession that it obtained wiretaps of Defendants' phones based entirely upon an invalid theory of wire fraud. There can be no doubt that the government's original wiretap application was predicated upon the old wire fraud theory, which centered on Auburn University's intangible right to control the allocation of its scholarships to men's basketball players. The application specified two target offenses – wire fraud and wire fraud conspiracy – and focused on NCAA regulations governing the eligibility of college athletes. (*See, e.g.*, Ex. 1 at US_00008602 – US_00008604.) The government no longer defends this untenable theory. (*See* Ex. 1 at US_00008565.)

Moreover, the new wire fraud theory cannot save the wiretaps from suppression. Apart from its legal defects, the wiretap applications fail to contain any facts, let alone establish a "fair probability," to support the conclusion that Mr. Person fraudulently obtained his salary by misrepresenting his compliance with NCAA rules.[2] Indeed, given that the new wire fraud theory emerged only during the pendency of this case, *none* of the new facts alleged in the Superseding Indictment are mentioned in the wiretap applications. Specifically, the Superseding Indictment references for the first time three documents: Mr. Person's 2016 employment agreement, an "ethical conduct agreement," and an "Employee Disclosure Form." The new wire fraud theory alleges that Mr. Person concealed his failure to comply with NCAA rules in these three

---

[2] Mr. Person addresses the legal defects in the new wire fraud theory in his reply memorandum of law in support of his motion to dismiss. He incorporates those arguments by reference herein.

documents. (*See* Superseding Indictment ¶¶ 23–26, 54.) Despite the obvious significance of these documents to the new wire fraud theory, these documents are nowhere to be found in the wiretap applications. Nor do the wiretap applications describe Mr. Person's salary, which is now the alleged object of the wire fraud charge in the Superseding Indictment. (*See id.* ¶ 23.) Across all six wiretap applications, there exists not a single reference to any representation made by Mr. Person to Auburn.

In sum, the government's belated retraction of its original wire fraud theory in this case vitiates the probable cause findings made in the Wiretap Orders. Absent a single fact about Mr. Person's supposed misrepresentations to Auburn, the first wiretap application could not have possibility have created a "fair probability" to believe that Mr. Person made a material misrepresentation to Auburn – an essential element of the new wire fraud theory. This deficiency in the first application, which was premised exclusively on wire fraud and wire fraud conspiracy, taints all subsequent applications, and requires suppression of all communications intercepted pursuant to the Wiretap Orders. *See United States v. Cirillo*, 499 F.2d 872, 878 n.3 (2d Cir. 1974) ("Since the application for these extensions was based on conversations intercepted as a result of the first order, if the first order were invalid, the subsequent extensions would be 'tainted' by the primary illegality.").

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' joint memorandum of law dated April 30, 2018, Defendant Chuck Connors Person respectfully moves for an order suppressing all communications intercepted pursuant to the Wiretap Orders, all material obtained from the searches of Defendants' cell phones, and all evidence derived therefrom.[3]

Dated: New York, New York
July 27, 2018

        Respectfully submitted,

        */s/ Theresa Trzaskoma*

        SHER TREMONTE LLP
        Theresa Trzaskoma
        Michael Tremonte
        Michael W. Gibaldi
        Emma Spiro
        90 Broad Street, 23rd Floor
        New York, New York 10004
        (212) 202-2600
        ttrzaskoma@shertremonte.com

        *Counsel for Chuck Connors Person*

---

[3] Mr. Person also joins in all arguments advanced by his co-defendant Rashan Michel in support of the pending motion to suppress and incorporates those arguments by reference herein.