UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- -x
                                                    :
UNITED STATES OF AMERICA                            :
                                                    :
        - v. -                                      :
                                                    :            17 Cr. 683 (LAP)
CHUCK CONNORS PERSON,                               :
and RASHAN MICHEL,                                  :
                                                    :
                        Defendants.                 :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - --x


# GOVERNMENT'S SUR-REPLY IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS

                                    GEOFFREY S. BERMAN
                                    United States Attorney
                                    Southern District of New York
                                    One St. Andrew's Plaza
                                    New York, New York 10007


Robert L. Boone
Noah Solowiejczyk
Eli J. Mark
Aline Flodr
Assistant United States Attorneys
- *Of Counsel*

The Government respectfully submits this sur-reply in opposition to the motion to dismiss the Superseding Indictment filed by defendants Chuck Connors Person and Rashan Michel.[1]

## BACKGROUND

On May 31, 2018, a grand jury in this District returned a six-count Superseding Indictment charging Person with conspiracy to commit bribery (Count One), solicitation of bribes and gratuities (Count Two), conspiracy to commit honest services wire fraud (Count Three), honest services wire fraud (Count Four), wire fraud (Count Five), and conspiracy to violate the Travel Act (Count Six). (Dkt. No. 71) (the "Superseding Indictment"). Michel was charged in each of the counts except for the substantive wire fraud charge (Count Five). (*Id.*).

All of the charges in the Superseding Indictment were materially identical to the charges in the initial Indictment except for Count Five, the wire fraud charge. The Government initially alleged in the original Indictment that Person and Michel conspired to commit wire fraud by facilitating and concealing payments to student-athletes and their families thereby causing Auburn University to provide athletic scholarships to the student-athletes when, in reality, they were ineligible to compete as a result of the bribe payments. (Dkt. No. 17, ¶ 48). In the Superseding Indictment, Person alone is charged with the substantive offense of wire fraud. The Superseding Indictment alleges that Person "participated in a scheme to defraud . . . by making material misrepresentations to Auburn University, including in written agreements and certification forms submitted to Auburn University, that concealed the existence of bribe

---

[1] Pursuant to the parties' agreement, the Government's sur-reply is limited to "addressing solely any new arguments raised in the Defendants' reply brief regarding the Superseding Indictment." (Dkt. No. 80).

payments that PERSON had received in violation of NCAA rules and PERSON's duties to Auburn University, based on which Auburn University provided salary payments to PERSON." (Superseding Indictment ¶ 54).  The Superseding Indictment alleges that Person further deprived "Auburn University of the right to control the use of its assets, including but not limited to, the decision of how to allocate a limited number of coaching staff positions, and further expos[ed] Auburn University to tangible economic harm, including monetary and other penalties imposed by the NCAA."  (*Id.*).

The Superseding Indictment also contains new allegations regarding the written contracts and written certifications that Person made to Auburn University during the relevant time period, many of which the Government alleges contained material misrepresentations. (Superseding Indictment ¶¶ 23-26).  For example, the Superseding Indictment alleges that Person submitted an "Employee Disclosure Form" in which he "falsely answered 'yes,' to the question 'I have reported through the appropriate individuals on our campus any potential violations and/or knowledge of any violations of NCAA, SEC, and Auburn University rules." (*Id.* ¶26).

## I.   COUNT FIVE SHOULD NOT BE DISMISSED

Person advances multiple arguments in support of dismissal of the wire fraud count (Count Five), all of which fail.

First, Person argues that the "alleged harm to Auburn was, at most, an 'inadvertent consequence' of the charged scheme." (Dkt. No. 84 (Person Mem.) at 3).  Person further contends that the allegations in the Superseding Indictment "make clear that Mr. Person's continued employment and receipt of a salary from Auburn were strictly incidental to [the bribery] scheme."  (Person Mem. at 3).

There is nothing about the allegations in the Superseding Indictment, however, that "make[s] clear that Mr. Person's continued employment and receipt of a salary from Auburn were strictly incidental to that scheme." (Def. Mem. at 3).  To the contrary, the Superseding Indictment alleges just the opposite, (*see, e.g.*, Superseding Indictment ¶ 23-26) and specifically alleges: (1) that Person intentionally made false representations to Auburn in written certification forms and ethical conduct agreements, among other misrepresentations, and (2) based on the plain language of Person's employment agreement, that Person was aware that truthful answers to those questions would have resulted in Person's termination and forfeiting of his salary. . (Superseding Indictment ¶ 23-26).  Finally, the Superseding Indictment also specifically alleges how Person's misrepresentations caused multiple forms of harm to Auburn University. (*Id.*).[2] Particularly at this stage, where the Court must accept all of these allegations as true, *see, e.g.*, *United States v. Clarke*, 2006 WL 3615111, at *1 (S.D.N.Y. Dec. 7, 2006) ("When deciding a motion to dismiss an indictment . . .  a court must accept all factual allegations in the indictment as true.") (citing *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (internal citation omitted)), these allegations are more than sufficient to satisfy Rule 7.  *See United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) ("To satisfy the pleading requirements of Fed. R. Crim. P. 7(c)(1), an indictment need do little more than to track the

---

[2] While the Court need only consider the Superseding Indictment at this stage, it bears noting that the Government has produced wiretap calls in which Person informs the parent of a student-athlete that she should not discuss their conduct with the head coach of Auburn University, Person's immediate supervisor, among others, precisely because Person understood that concealing the scheme alleged in the Indictment was far from "strictly incidental" to his continued employment.

language of the statute charged and state the time and place (in approximate terms) of the alleged crime.").[3]

At bottom, Person's argument is that this Court should make a finding, at the motion to dismiss stage, either that false statements were immaterial or that Person lacked the requisite criminal intent.  But these question are, of course, reserved for the jury and cannot be resolved on a motion to dismiss.  *See United States v. Martin*, 411 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (rejecting argument that indictment failed to allege "intended harm," and thus the fraudulent intent element of the offense, because "the sufficiency of the government's evidence of ... fraudulent intent is not considered on a motion to dismiss the indictment"); *United States v. Ashley*, 905 F. Supp. 1146, 1155-56 (E.D.N.Y. 1995) (while Government might need to "prove" at trial that defendants contemplated damage to victim in order to show fraudulent intent in support of wire fraud charge, "the indictment at issue [was] not insufficient for failure to

---

[3] Person acknowledges, as he must, that false statements on job applications and qualification exams to obtain employment or a job promotion may constitute wire fraud, but argues that because Person had already obtained the job in question, his alleged lies to remain employed are distinguishable as a matter of law.  (Person Mem. at 4).  This argument is untenable.  In either circumstance, the goal is to obtain money or property – in the form of salary – from one's employer under false pretenses. Whether the misrepresentations occurred prior to obtaining employment or after already being employed is immaterial.  There is no support in logic or law for the artificial rule Person advances, namely that schemes involving misrepresentations in order to *obtain* employment are cognizable wire fraud, but schemes involving misrepresentations in order to *maintain* employment and continue earning a salary are not.  Indeed, courts have held that misrepresentations that led to an employee obtaining salary they were not entitled to – not a job position or a promotion – from their employer can constitute wire or mail fraud. *See United States v. Turner*, 551 F.3d 657 (7th Cir. 2009) (upholding as "straightforward money or property fraud" a scheme whereby janitors employed by the State of Illinois worked only a small fraction of their required hours but falsified their attendance logs and collected their full salaries); *see also United States v. Sorich*, 523 F.3d 702, 713 (7th Cir. 2008) (same); *United States v. Douglas*, 398 F.3d 407, 417-18 (6th Cir. 2005); *United States v. Grandberry*, 908 F.2d 278, 280 (8th Cir. 1990)).

specifically allege fraudulent intent on the part of [d]efendants") (emphasis in original)); *United States v. Light*, No. 00 CR 417, 2000 WL 875846, at *2 (N.D. Ill. June 29, 2000) ("The issue of [the defendant's] intent involves evidentiary issues that will be addressed at trial. Thus, this argument is not properly made on a motion to dismiss.").  If Person wishes to argue that the alleged false statements were immaterial or that he did not possess the requisite intent to cause harm to Auburn University and that such harm was "strictly incidental" to the scheme, those arguments are for trial, not a motion to dismiss.[4]

Person also argues that, were this Court to permit the Government to proceed with its wire fraud charge, it would result in an "almost limitless definition of wire fraud" that raises due process concerns.  (Person Mem. 5).  Person specifically contends that "in this case, it is no exaggeration to say the government's new wire fraud theory . . . would criminalize nearly all undisclosed NCAA rules violations because every college coach and staff member routinely certifies compliance with NCAA rules."  (Person Mem. at 5).  For example, Person claims that "a coach who consumes tobacco products during practice" will now have committed a federal felony under the Government's wire fraud theory. (*Id.*).

---

[4] Person also cites *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586 (S.D.N.Y. 2015) and notes that Judge Karas recently rejected the "salary theory" in the context of a civil RICO action "alleging a scheme to rig a local election." (Person Mem. at 4 n. 3).  *Astorino* is readily distinguishable from this case.  Unlike in this case where there is no dispute that the salary that Auburn paid to Person was money and property that belonged to Auburn and that Auburn controlled, the election fraud context presents an entirely separate issue, as Judge Karas noted, because the government does not decide who receives the salary, rather the electorate does.  *See Astorino*, 137 F. Supp. 3d at 604 ("the salary theory is an imperfect fit in the election context because the government has no choice in who is to be elected. It is the electorate that decides who receives the salary, and the government simply is required to pay the salary to the winner.").  *Astorino* thus presents an entirely different set of issues that are inapplicable to the instant case.

Person's argument ignores the very materiality and intent requirement of the wire fraud statute described above, namely the requirements that the Government establish that Person, through his conduct, intended to defraud his employer and that his false statements were sufficiently material so as to accomplish that objective. *See, e.g., United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) ("In order to prove the existence of a scheme to defraud, the government must also prove that the misrepresentations were material, . . . . A false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the [decisionmaker] to which it was addressed." (citations and quotations omitted).  Of course, had Person merely violated the NCAA rules regarding consumption of tobacco during practice, the Government would be hard-pressed to convince a grand jury, let alone prove at trial, that Person had intended to deceive Auburn, or that he had made a *material* misrepresentation to Auburn and that had Auburn known of this conduct it would not have paid him his salary.  Similarly, the Government would be hard-pressed to establish, under a right to control theory of wire fraud, that Person, through his conduct, had intentionally deprived the University of information likely to expose the University to the risk of tangible economic harm. *See United States v. Finazzo*, 850 F.3d 94, 107-13 (2d Cir. 2017) (noting that "the common thread of [the right to control] decisions is that misrepresentations or non-disclosure of information cannot support a conviction under 'the right to control' theory unless those misrepresentations or non-disclosures can or do result in tangible economic harm.").

Most important, whatever potential risks any future Indictment might raise, in this case, the Superseding Indictment alleges a far more serious breach of Person's duties to Auburn University, his knowledge that truthful disclosure of his conduct to his employer would result in

his termination, his resulting, deliberate efforts to conceal that conduct from his employer to

maintain employment, and the significant and tangible economic harms he exposed Auburn

University to as a result, including monetary and other penalties imposed by the NCAA.

(Superseding Indictment ¶ 54).

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss the Indictment should

be denied in its entirety.

Dated:  New York, New York
        August 24, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
for the Southern District of New York

By:    /s/ Noah Solowiejczyk_____
       Robert L. Boone
       Noah Solowiejczyk
       Eli J. Mark
       Aline Flodr
       Assistant United States Attorneys